**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO. 6:20-cv-00698-ORL-40LRH**

**ULYSSES HOLMES, individually,**

      **Plaintiff,**

**v.**

**WCA MANAGEMENT COMPANY, L.P.,**

      **Defendant.**

_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Ulysses Holmes ("Holmes" or "Plaintiff") and WCA MANAGEMENT

COMPANY, L.P., ("WCA") (collectively the "Parties"), hereby move for this Court's

preliminary approval of the Parties' class action settlement;[1] preliminarily certifying the

proposed settlement class; designating Holmes as the settlement class representative and his

attorneys as class counsel; approving the form and manner of class notice; authorizing the

settlement administrator to disseminate a notice of settlement to the settlement class

members; set a deadline to opt out or object and scheduling a final approval hearing no

earlier than one ninety (90) days after this Court's Preliminary Approval Order.

As explained further below, the proposed settlement provides for settlement payments

to be made to approximately 1,771 class members. Defendant will create a common fund for

Class Members consisting of $210,000. The Class Members will not be required to take any

action to receive a portion of the funds, making it a "claims paid" settlement. Members of the

class will receive a *pro rata* gross amount of the settlement fund totaling approximately $118 and a net payment of approximately $68. This gross amount is consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.   In sum, the Parties respectfully submit that the proposed settlement is fair, reasonable, and adequate and ask that it be approved accordingly.   The Parties support this request for relief on the bases set forth below.

I.    **BACKGROUND.**

    A.    **Nature of Plaintiff's Claim.**

1.    On or about April 2, 2020 Plaintiff filed a Class Action Complaint, which was amended on June 9, 2020 (collectively the "Complaint"), against WCA.   Plaintiff asserted claims in the Complaint on behalf of himself and a putative class against WCA under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").   [ECF No. 1]. Plaintiff alleged that WCA violated the COBRA notice requirements by providing him, and other class members, a deficient COBRA notice ("COBRA Notice") that failed to comply with certain requirements of the federal regulations, pursuant to 29 C.F.R. §2590.606-4(b)(4) *et. seq.*

2.    Plaintiff sought statutory penalties pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1 for himself and each putative class member who was sent an allegedly defective COBRA Notice.   Plaintiff also claimed injunctive relief individually, and on behalf of the putative class, regarding the subject COBRA Notice.

---

[1] The Class Action Settlement Agreement is attached as Exhibit "A".

**B.**    **WCA's Defenses.**

3.    WCA responded to the Amended Complaint on June 15, 2020 by denying certain allegations, including that the alleged COBRA Notice did not violate any of the COBRA provisions referenced in the Complaint.  [ECF No. 19].

4.    WCA also raised numerous affirmative defenses, including those directed at Plaintiff's class allegations – that Plaintiff is an inadequate class representative, the lack of numerosity, typicality, commonality, and that individual issues predominate over those typical of the class.  (*See id*).  WCA further raised defenses, including preemption of common law claims, the failure to comply with Plan documents, the failure to mitigate damages, the failure to assert a cognizable cause of action, WCA's good faith, Plaintiff's lack of injury, the failure to satisfy jurisdictional prerequisites and exhaust administrative remedies, the COBRA Notice met the applicable legal standards, injunctive relief as inappropriate in that Plaintiff had an adequate remedy at law, Plaintiff's lack of standing and the failure to include all indispensable third parties.

5.    The Court issued a Case Management and Scheduling Order on September 17, 2020 establishing deadlines, including the filing of the motion for class certification by December 30, 2020; discovery completion by March 26, 2021; filing dispositive motions by April 23, 2021, mediation completion by October 5, 2020 and the trial term commencing October 4, 2021.  [ECF No. 17].

**C.**    **The Parties Engaged in Extensive Discovery Before Settling.**

6.    Extensive discovery was conducted in this case before any settlement was reached.

7.     The Parties initiated the discovery process by exchanging initial Rule 26 disclosures in July of 2020.

8.     Plaintiff served class-wide written discovery on Defendant, including interrogatories, requests for production, and a notice for the deposition of Defendant's corporate representative.

9.     Additionally, Plaintiff conducted third-party discovery, including by serving a subpoena for documents and deposition on Defendant's COBRA Administrator in mid-July, 2020.  This was done to confirm information and size related to the putative class.

10.    Defendant, in turn, served written discovery on Holmes, including interrogatories, requests for production, and noticed him for deposition.

11.    Holmes responded to Defendant's interrogatories and requests for production on August 26, 2020.   Likewise, Defendant responded to Plaintiff's interrogatories and requests for production shortly thereafter.    The Parties also exchanged hundreds of pages of documents.

12.    Holmes was deposed by Defendant's counsel on September 2, 2020.  It was only after sufficient discovery was conducted that the Parties mediated this case, as set forth further below.

**D.     Mediation and Settlement.**

13.    Following the conclusion of extensive discovery, the Parties and their Counsel attended mediation with highly-respected mediator, Carlos Burreuzo, on October 5, 2020. [ECF No. 36].  With the assistance of Mr. Burreuzo, a settlement agreement was reached at the mediation conference.

14.     Following the mediation, the Parties have agreed on all terms of the settlement and entered into an executed Settlement Agreement.    (*See* Ex. "A," the "Settlement Agreement").

## II.    <u>OVERVIEW OF SETTLEMENT TERMS.</u>

For the reasons set forth below, the settlement is fair, reasonable and adequate. More specifically:

a.     The settlement was vigorously negotiated at arm's-length with the assistance of a Mediator at a mediation conducted only after the Parties exchanged extensive written discovery, the deposition of Plaintiff, and even third-party discovery;

b.     The settlement provides for significant monetary and prospective relief that is well within the range of similar COBRA notice class action settlements;

c.     The settlement is not contingent upon the Court's approval of Class Counsel's attorneys' fees or costs;

d.     The class release in the Settlement Agreement is narrowly-tailored to apply only to claims at issue in this lawsuit;

e.     The Settlement Agreement provides for direct notice to settlement class members via U.S. First-Class Mail;

f.     Settlement class members are not required to file claim forms in order to receive settlement checks, making this a "claims paid" settlement;

g.     The Gross Settlement Fund will be a fully-funded common fund;

h.     The settlement provides the opportunity for potential settlement class members to opt-out or object to the settlement within sixty (60) days of notice being mailed.

i.     If any settlement class member fails to tender his/her settlement payment checks within the period provided in the Settlement Agreement, any funds remaining in the settlement account (after deduction for all Court-approved deductions) will revert to Defendant with the remaining balance paid in equal distributions to WCA and Empyrean Benefit Solutions, Inc.

A.     **Proposed Nationwide Settlement Class.**

The Settlement Agreement calls for certification of a nationwide Settlement Class (the "Settlement Class"), which is defined as follows:

> All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by, or on behalf of Defendant, from April 1, 2016 to November 18, 2020, or the date of receipt by the subject participants and beneficiaries, whichever is later, and who did not elect continuation of coverage.

Based on class data criteria provided by HealthEquity, Inc., who provided the COBRA notice at issue to the putative class members, the total class size of potential members is approximately 1,771.

B.     **The Settlement Provides for Significant Relief.**

A settlement account will be funded in the total gross amount of $210,000, which will be used to compensate settlement class members on a *pro rata* portion of the gross settlement amount.  This amount includes the anticipated amount that WCA will pay if

every class member participated in the settlement and received a settlement payment, class counsel's fees, litigation costs, and settlement administration expenses.

The net settlement proceeds of the total gross settlement will be distributed evenly among all settlement class members on a *pro rata* basis and will be made on a "claims paid" basis without the need to fill out, or submit, a claim form.  The total of all payments*,* whether for attorney's fees, costs, expenses, administrative expenses, and class member settlement payments, shall not exceed the gross settlement amount of $210,000.  With the Settlement Class comprised of approximately 1,771 members, each settlement class member, who does not opt-out of the settlement, will be allocated a gross settlement payment of approximately $118.57.[2]   If the Court awards the amount sought for the Class Counsel's attorney fees and costs, and expenses of settlement administration, the net amount payable to each class member will be approximately $68.67.[3]  Every class member will be mailed a check by the Settlement Administrator receive a without having to take any action whatsoever, as this is a "claim paid" settlement.   And potential class members who elect to opt-out of the settlement may pursue all of their claims without release.

   **C.    <u>Release of Claims</u>.**

In exchange for the monetary and any other relief set forth in the Settlement Agreement, settlement class members who do not-opt out of the Settlement will release WCA and its third party COBRA notice providers, WCA's third party health care provider, its outsourced third party COBRA administrator, all entities identified in

---

[2] $210,000 / 1,771 = $118.57 gross recovery per class member.
[3] $210,000 - $70,000 in attorneys' fees (33.3% of total fund) - $702.60 in litigation costs - $17,755 in settlement administrator costs = $121,542.40 / 1,771 total class members = $68.67 net recovery per class member.

Paragraph 30 of Exhibit "A," and each of their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns, from all claims asserted in Plaintiff's Complaint and all other claims that arise out of, or relate to, the facts alleged in the Complaint.

Settlement class members' claims, if any, which are unrelated to the facts and causes of action alleged in this cause are **not** released by the terms of the Settlement Agreement. Any potential settlement class members who elect to opt-out of the Settlement are not bound by the Settlement Agreement, nor the release, even though they may benefit from this Settlement because, at a minimum, they will have been informed of the alleged deficiencies in Defendant's COBRA Notice, and of their right to participate in the Settlement.

### D.    Notice of Settlement, Claims Process, and Settlement Administration.

The Parties have agreed to utilize a private, third-party vendor, to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Administrator shall be paid from the settlement account.

If the Parties' Settlement is preliminarily approved by this Court, Settlement Class Members, within ten (10) business days of the Court's preliminary approval, will be sent a Short Form Postcard Notice of Settlement via U.S. First-Class Mail. Mail.[4] The Short Form

---

[4] The Notice of Settlement will be sent to Settlement Class Members' addresses as they are maintained by WCA's third-party COBRA administrator, subject to updating by cross-referencing the National Change of Address Database. In the event that a Notice is returned as undeliverable with a forwarding address, it will be forwarded to that address. If a Notice is returned without a forwarding address, the Settlement Administrator or

Postcard Notice will direct the Settlement Class Members to the Settlement Administrator's website, which will provide a long form of the Notice of Settlement, along with other pertinent documents (attached as Ex. "B"). This long form, or comprehensive notice that will be available on the Settlement Administrator's website will include, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) an explanation of Settlement Class Members' opt-out rights, a date by which Settlement Class Members must opt out, and information regarding how to do so; (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) the toll-free number from which Settlement Class Members may obtain additional information about the Settlement; (9) contact information for the Settlement Administrator; and (10) the amount that Class Counsel may seek in attorneys' fees and expenses. Settlement Class Members will also be informed that they have 60 days from the date that the Short Form Notice of Settlement is mailed to opt out of the Settlement, or object to the Settlement.

The Settlement Administrator's website will allow Settlement Class Members who would like further information to download copies of the Complaint, Settlement Agreement, settlement approval motion papers, and motion papers in support of the requested attorneys' fees and administrative expenses.  In addition, there will be a toll-free number that Settlement Class Members may call for more information about the Settlement.

---

Class Counsel will make reasonable efforts to obtain a valid address for the Settlement Class Member, and mail the Notice to the updated address.

If the Court grants final approval of the settlement, the full amount of the gross settlement amount will be paid to the Settlement Administrator as reflected in the Settlement Agreement, Ex. "A" at ¶38), the total deposit of the gross settlement sum of Two Hundred Ten Thousand Dollars and No Cents ($210,000.00) shall be made into the Settlement Account, which sum may be paid in one or more deposits to the Settlement Account, which shall establish the gross settlement and be used by the Settlement Administrator to, among other things, pay Settlement Class Members and to pay any amounts approved by the Court for Plaintiff's attorneys' fees and expenses, and the expenses of settlement administration. Payment of this sum shall be the sole, total and only payment obligation WCA and/or or any released party has in settlement of this Action. To the extent any money remains in the Settlement Fund after these distributions and after Class members have had 60 days to cash their settlement checks, such monies shall revert to Defendant with the remaining balance paid in equal distributions to WCA and Empyrean Benefit Solutions, Inc.

> **E.     Attorneys' Fees and Costs and Settlement Administration Expenses.**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to 33.33% of the Settlement Amount and seek to recover costs from the common fund, which WCA will not oppose. Court-approved costs and fees of the Settlement Administrator shall be paid from the common fund.

III.    **PRELIMINARY SETTLEMENT CLASS CERTIFICATION.**

As part of preliminary approval of the Settlement, the Parties respectfully seek certification of the Settlement Class for the purposes of settlement in this case, as described above.

A.    **The Settlement Agreement is Reasonable and Fair.**

When considering judicial approval of a class settlement agreement, the Court "should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith v. Wm. Wrigley Jr. Co.,* 2010 U.S. Dist. WL 2402249, at *2 (S.D. Fla., June 15, 2010).  Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a different analysis where certification is contested than where, as here, a proposed settlement is under review.

"[I]n its preliminary assessment of the fairness of the proposed agreement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Smith v. Ajax Magnethermic Corp.*, 2007 U.S. Dist. WL 3355080, at *5 (N.D. Ohio, Nov. 7, 2007); *see also La. Wholesale Drug Co. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),* 2005 U.S. Dist. LEXIS 46189, at *14 (S.D. Fla. Mar. 17, 2005) ("All proposed classes must meet the requirements of Rule 23, but the fact of settlement can have an effect on the analysis."). Rule 23 requirements are more easily satisfied in the context settlement than in contested litigation. *Sullivan v. DB Investments Inc*. 667 273, 290-91 (3d Cir. 2011) ("some inquiries essential to litigation class

certification are no longer problematic in the settlement context."); *In re American International Group Inc. Securities Litigation*, 689 F.3d 229 (2d Cir. 2012) ("settlement is relevant to class certification").

The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re US. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre- Val v. Buccaneers Ltd. Partn.,* 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir.1977)).

### 1.    The Settlement Resulted from Good-Faith Negotiations Among Experienced Counsel and Represents a Reasonable Amount.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith,* 2010 U.S. Dist. LEXIS, at *7. Here, the proposed Settlement Agreement is the result of arm's length negotiations that occurred during mediation with an experienced and impartial mediator. *Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well- respected mediator"). Moreover, counsel representing the Parties are experienced in class action and

12

complex litigation and were well-versed in the strengths and weaknesses of this case. Additionally, there is no evidence that the Parties, or their counsel, failed to act in good faith or somehow colluded in reaching the settlement terms and conditions. In fact, the Settlement was reached after extensive discovery efforts, including written discovery, third-party discovery, and the deposition of Plaintiff. Needless to say, the Parties and their counsel were aware of the strengths and weaknesses of their positions and proceeded to negotiate in good faith leading to an amicable settlement agreement.

The Settlement also falls with a reasonable range. More specifically, and as stated above, the gross recovery, according to the putative class size of 1,771, is approximately $118 and a net of $68. This amount is within a reasonable range of settlements for this type of COBRA notice claim. *See, e.g.*, *Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Court approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc*., Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13);*Carnegie v. FirstFleet, Inc.,* Case No. 8:18-cv-01070-CEH-CPT (M.D. Fla. 2018) ($386,000 total settlement, 2,078 class members and $185.75 recovery per class member); *Valdivieso v. Cushman & Wakefield, Inc.,* Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. 2018) ($390,000 total settlement, 2,351 class members and gross recovery of $165.89 per class members; *Gilbert v. SunTrust Banks, Inc.,* Case No. 9:15-80415-Civ-

Brannon (S.D. Fla. July 29, 2016) (court approved settlement in COBRA notice case with each class member's gross recovery was $32.22).

Additionally, there is a risk that Plaintiff would not prevail on his claims considering there are no decisions directly on-point addressing whether, or not, the language of the COBRA Notice at issue violated any of the applicable legal regulations. *See* 29 C.F.R. 2590.606-4(b)(4) (COBRA notice was written in a manner to be understood by the average plan participant); 29 C.F.R. §2590.606-4(b)(4)(viii) (explanation of the continuation coverage termination date); 29 C.F.R. 2590.606-4(b)(4)(i)(explaining the required identification of the party responsible under the plan for the administration of continuation coverage benefits).

Further, WCA raised numerous defenses, including Plaintiff's failure to mitigate his damages or establish any prejudice by the COBRA Notice, among others. *See, e.g., Scott v. Suncoast Bev. Sales, Ltd.,* 295 F.3d 1223 (11th Cir. 2003)(citing *Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir. 1990)); *Sziranyi v. Dunn*, 2009 U.S. Dist. LEXIS 128536 (S.D. Fla. Sept. 30, 2009). Moreover, evidence of the administrator's good faith, including immediate corrective efforts when notification violations come to light, and the absence of prejudice caused by technical violations, are also significant to the district court's determinations concerning statutory penalties. *Gomez v. St. Vincent Health, Inc.*, 649 F. 3d 583, 591 (7th Cir. 2011). Some courts have not awarded any statutory penalties in COBRA notice cases in the absence of a showing of bad faith or prejudice. *Id*. at 589-91; *Sanders v. Temenos USA, Inc.*, 2017 U.S. Dist. LEXIS 169288, *25-26 (S.D. Fla. Oct. 13, 2017)(same); *see also Morehouse*, 2018 U.S. Dist. LEXIS 189876, at *4-5 (recognizing that

many courts determine not to impose statutory penalties).  As such, a successful outcome was not guaranteed should Plaintiff continue to litigate his claims.

Likewise, Plaintiff would have faced risks on class certification, including standing, adequacy of serving as a class representative, commonality of claims, and other class action defenses as asserted by WCA.   Finally, and further indicating the fairness of the settlement, the Parties have agreed that if more than 35 putative class members file opt-out requests, WCA shall have the right to withdraw from the settlement with the Settlement Agreement becoming null and void.

### 2.    The Settlement Occurred at the Proper Stage of the Proceedings.

As more fully set forth above, the parties attended a mediation conference after they exchanged discovery and Plaintiff's deposition was taken.  Moreover, continuing with the litigation would have resulted in complex, costly and lengthy proceedings, including class discovery, additional depositions, summary judgment motion practice, trial preparations and then a trial on the merits.  The time, costs and fees associated with these litigation activities would have been significant.  Further, if Plaintiff prevailed on the class claims and prevailed on the merits, WCA would likely appeal to the Eleventh Circuit, which would result in more expense and delay.

### 3.    Plaintiff and his Counsel Support the Settlement.

Plaintiff and his Class Counsel agree to the proposed settlement, which is further indicated by their execution of the Settlement Agreement.   Plaintiff's counsel has also provided declarations showing their support for the settlement.  If potential class members

are not satisfied with the settlement terms after receiving a Notice of Settlement, they have the opportunity to opt-out or object.

### B. The Settlement Class Meets the Requirements of Rule 23(a).

A court can certify a settlement class where the proposed class, and proposed class representative, meets the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b). *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1265 (11th Cir. 2009). Here, pursuant to Rules 23(a) and 23(b)(3), Plaintiff seeks certification of a defined settlement class:

> All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by, or on behalf of Defendant, from April 1, 2016 to November 18, 2020, or the date of receipt by the subject participants and beneficiaries, whichever is later, and who did not elect continuation of coverage.

The proposed Settlement Class in this cause meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation.

### 1. Numerosity.

The proposed class of approximately 1,771 individuals is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). *See Williams v. Wells Fargo Bank, NA.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate"). The Court may also find the numerosity factor satisfied if it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. Additionally, the nature and size of the individual claims also make joinder impracticable.

### 2.    Commonality.

The United States Supreme Court has clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike." *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *5-6 (*internal quotations and citation to Dukes*, 131 S. Ct. at 2556, *and others omitted*); *see also Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012).

The common questions, according to Plaintiff's class certification motion are, among other things: (1) whether the content of the COBRA notice was proper; and (2) whether, and to what extent, statutory penalties are appropriate. Further, Plaintiff contends that each member of the putative class received, or should have received the purported inadequate COBRA notice. These common issues support certification of the proposed Settlement Class for settlement purposes. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist. LEXIS 6235, at *5 (M.D. Ala. Jan. 16, 2013). Thus, the claims of the Settlement Class members are based on the same set, or a similar set, of operative facts.

Moreover, even if the award of damages were to vary among class members, the Eleventh Circuit has held that the presence of individualized damages does not prevent a

finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F. 3d 1248, 1261 (11th Cir. 2003). Accordingly, the requirement of commonality has been met.

### 3.      Typicality is Satisfied.

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008). The typicality requirement "is said to limit class actions to those fairly encompassed by the named plaintiffs' claims." *GTE Co. of the Northwest v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the legal theories underlying Plaintiff's claims are identical to the putative members in the settlement classes. Plaintiff alleges that the COBRA notice received contained legally deficient content. The putative members in the Settlement Class are alleged to have received the same, or similar, COBRA notice, which Plaintiff alleges contained content that did not comply with the COBRA regulations. In sum, Plaintiff, as the Class Representative, has claims that are "typical" of the Settlement Class; consequently, the typicality requirement of Rule 23(a)(3) has been satisfied. *See* FED. R. CIV. P. 23(a)(3); *Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (claims considered typical as

"[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. §1166, a common course of conduct, and are based upon the same legal theory").

### 4.    Adequacy of Representation.

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. Plaintiff, Ulysses Holmes, is adequate given that his interests are equivalent to those in both settlement classes. There is also no obvious conflict of interest between Plaintiff and the settlement classes. The Plaintiff has the same interest as those in the Settlement Class in prosecuting his claims and, in fact, participated actively in the litigation by assisting Class Counsel in developing the facts necessary to file the Complaint, participating in discovery, being deposed, and by appearing at mediation and supporting the claims of his fellow Settlement class members.

Here, Plaintiff's counsel has extensive experience litigating other class action cases, including COBRA class actions. *See generally* Declaration of Brandon J. Hill and Luis A. Cabassa.   When, as here, the Parties are represented by counsel who have significant

experience in class-action litigation and settlements and in COBRA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C*., 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co*., 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

Proposed Class Counsel has represented Rule 23 classes in many other cases, and is qualified to do so here. For example, the undersigned was appointed as class counsel in another COBRA notice class action case in *Vazquez v. Marriott International, Inc*., M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF, as well as in *Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS. Mr. Hill and Mr. Cabassa were also appointed as class counsel in another case presided by Judge Jung in *Hargrett, et al. v. Amazon.com DEDC, LLC*, M.D. Fla. Case No.: 8 8:15-cv-02456-WFJ-AAS. Other cases in which Mr. Hill and Mr. Cabassa have served as class counsel include S*peer v. Whole Foods Market Group, Inc*., Case No.: 8:14-cv-03035-RAL-TBM (M.D. Fla., Sept. 9, 2015); *Patrick v. Interstate Management Company, LLC*, 8:15-cv-01252-VMC-AEP (M.D. Fla.); *Smith, et al. v. QS Daytona, LLC*, Case No.: 6:15-cv-00347-GAP-KRS (M.D. Fla. Oct. 22, 2015) (Doc. 45); *Kohler v. SWF Operations, LLC* et al., 8:14-cv-02568-MSS-TGW (M.D.

Fla. June 27, 2016); *Mahoney v. TT of Pine Ridge, Inc*., Case No.: 9:17-cv-80029-DMM (S.D. Fla. Nov. 20, 2017); and *Moody v. Ascenda*, *Inc., et a*l., 16-60364-WPD (S.D. Fla. March 12, 2018) (FCRA class action involving 58,000+ class members), among others.

**C.    The Settlement Class Meets the Requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class in this case meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

**1.    Predominance.**

Predominance is governed by an analysis of whether liability may be resolved on a class- wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at \*10-11 (*internal citations omitted*). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The central common issues in this case concern a standardized COBRA notice that was common to all Settlement Class members are believed to have received the same COBRA Notice as to the content that Plaintiff claims were not legally compliant. Moreover, common questions of law

and fact pertain to whether WCA should be required pay statutory penalties for utilizing that particular notice. Further, the Settlement Class members all are alleged to have received the same COBRA notice that was allegedly not in compliance with the applicable regulations. *See, e.g., Slipchenko v. Brunel Energy, Inc.,* 2013 U.S. Dist. LEXIS 124159 (S.D. Tex. Aug. 30, 2013) (COBRA case finding common issues predominated).

### 2. Superiority.

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for individual members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer,* 2012 U.S. Dist. LEXIS 63795, at *20 ("Given the small amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 679 (S.D. Fla. 2011). Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the subject Settlement Class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor"). Here, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met.

The Settlement Class members who received WCA's COBRA Notice are unlikely to be aware that their rights may have been violated, and are therefore unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection LLC,* 250 F.R.D. 366, 374 (N.D. Ill. 2008) (finding class action superior method of litigation where class members might not be aware that they have legal claims). Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties, which may not be awarded), it is unlikely that class members would pursue their claims.

Moreover, even if Settlement Class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir.

23

1983). Thus, a class action is superior to other available methods for fairly and efficiently adjudicating this dispute.

  **D.**  <u>**The Class Notice Meets the Requirements of Rule 23(c).**</u>

  The Parties submit that the proposed Notice and Official Notice Form (hereinafter "Class Notice"), copies of which are attached, meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). That rule, in pertinent part, provides as follows: Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must concisely state in plain, easily understood language:

    (i)  the nature of the action;
    (ii)  the definition of the class certified;
    (iii)  the class claims, issues, or defenses;
    (iv)  that a class member may enter an appearance through an attorney
       if the member so desires;
    (v)  that the court will exclude from the class any member who
       requests exclusion;
    (vi)  the time and manner for requesting exclusion; and
    (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

  The proposed Notice of Settlement includes this information.   Under the Settlement, each member of the Settlement Class will be sent a Short Form Postcard Notice of the proposed settlement via U.S. First-Class Mail, informing them of the terms of the Settlement and their right to opt-out or object. The Short Form Notice will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided.   The content of the long form of the Notice is also reasonable and appropriate.   As such, this Court should approve both the Short Notice and the Long Form Notice of Settlement and find that the contents and methods of dissemination are reasonable.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order and (a) certify the Settlement Class for settlement purposes only; (b) appoint Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel for settlement purposes; (c) authorize distribution of the Notice of Settlement to the Settlement Class; (d) set a Deadline to Opt Out or Object; and (e) set a date for a Final Approval Hearing, not to occur until at least ninety (90) days after the Court's Preliminary Approval Order.

Dated:  December 18, 2020                    Respectfully submitted,

By: /s/ Brandon J. Hill                      By: /s/ Sherril M. Colombo
Brandon J. Hill, Esq.                        Sherril M. Colombo, Esq.
Florida Bar No. 37061                        Florida Bar No. 948799
E-mail: bhill@wfclaw.com                     E-mail: scolombo@littler.com
Secondary E-mail: gnichols@wfclaw.com        Secondary E-Mail: grivas@littler.com
Luis A. Cabassa, Esq.                        Stefanie Mederos, Esq.
Florida Bar No. 53643                        Florida Bar No. 12041
E-mail: lcabassa@wfclaw.com                  E-mail: smederos@littler.com
Secondary E-mail: gnichols@wfclaw.com        Secondary E-mail: ccano@littler.com
WENZEL FENTON CABASSA, P.A.                  LITTLER MENDELSON, P.C.
1110 N. Florida Avenue,                      Wells Fargo Center
Suite 300                                    333 SE 2nd Avenue, Suite 2700
Tampa, FL 33602                              Miami, FL 33131
Telephone: (813) 224-0431                    Telephone: (305) 400-7500
Facsimile:  (813) 229-8712                   Facsimile:  (305) 603-2552

*COUNSEL FOR PLAINTIFF*                       *COUNSEL FOR DEFENDANT*