# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ULYSSES HOLMES,

        Plaintiff,

v.                              Case No: 6:20-cv-698-PGB-LRH

WCA MANAGEMENT COMPANY, L.P.,

        Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 47)** |
| **FILED:** | **December 18, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    Background

On April 1, 2020, Plaintiffs Ulysses Holmes and LaPhadra Holmes, on behalf of themselves and all others similarly situated, filed a putative class action complaint against Defendant WCA Waste Systems, Inc., alleging violations of the notice requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1166(a) ("COBRA"). (Doc. 1). The operative pleading is the amended class action complaint ("Complaint") filed on June 9, 2020, which names

WCA Management Company, L.P. ("WCA") as the proper Defendant.   (Doc. 18; *see also* Doc. No. 13).

As alleged in the Complaint, Plaintiff Ulysses Holmes was employed by WCA for approximately one year, during which time he obtained medical insurance through WCA's group health plan for himself and his dependents, including his wife Plaintiff LaPhadra Holmes.   (Doc. 18 ¶ 27).   In March 2019, WCA terminated Mr. Holmes' employment, which was a "qualifying event" triggering WCA's COBRA notice obligations for continuing health insurance coverage. (*Id.* ¶¶ 29-30).   Plaintiffs allege that the COBRA notice provided by WCA violated applicable COBRA regulations because:   (a) it failed to provide an explanation of the continuation coverage termination date, but rather omitted the termination date entirely; (b) failed to include information about how participants can lose COBRA coverage before the omitted termination date; (c) failed to identify the Plan Administrator for the group health plan, and (d) was not written in a manner calculated to be understood by the average plan participant.   (*Id.* ¶¶ 31-34, 36-46 (citing 29 C.F.R. §§ 2590.606-4(b)(4)(i), (viii) and (xii))).   The deficiencies in the COBRA notice confused Plaintiffs, resulting in "an informational injury" to Plaintiffs, a failure to elect COBRA continuation coverage, the loss of health insurance coverage for themselves and their dependents, and the need to pay out of pocket for medical expenses until Plaintiffs obtained health insurance through a subsequent employer.   (*Id.* ¶¶ 22-26).

Plaintiffs seek relief on behalf of themselves and a putative class of all participants and beneficiaries in WCA's health plan who were sent a COBRA notice by WCA and did not elect COBRA benefits.   (*Id.* ¶ 47).   Plaintiffs request declaratory and injunctive relief, statutory penalties, and attorneys' fees and costs.   (*Id.* 15-16).

WCA filed its answer and affirmative defenses to the Complaint on June 15, 2020.   (Doc. 19).   WCA asserted a variety of defenses, including that the COBRA notice did not violate any of the identified regulations.   (*Id.*).   On September 17, 2020, the Presiding District Judge issued a Case Management and Scheduling Order ("CMSO") setting a deadline of December 18, 2020 for class discovery, and December 30, 2020 for filing any motions for class certification.   (Doc. 34, 1-2).

The parties settled this action on or about October 5, 2020, prior to a judicial determination of class certification, (*see* Docs. 35-37, 39), and Plaintiffs voluntarily dismissed all claims brought by Plaintiff LaPhadra Holmes on November 20, 2020.   (Docs. 41, 44).   With leave of Court (Docs. 40, 43, 46), the parties now jointly move for preliminary approval of their settlement agreement and preliminary certification of a proposed settlement class.   (Doc. 47) ("Joint Motion").     The parties have also submitted a copy of the fully executed settlement agreement.   (Doc. 47-1).   Specifically, the parties have agreed to certify a nationwide settlement class, defined as follows:

> All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by, or on behalf of Defendant, from April 1, 2016 to November 18, 2020, or the date of receipt by the subject participants and beneficiaries, whichever is later, and who did not elect continuation of coverage.

(Doc. 47, at 6).

The parties represent that the proposed settlement class consists of approximately 1,771 class members, and that WCA will create a common fund for class members consisting of $210,000.00. (*Id.* at 1, 6-7).   It will be a "claims paid" settlement, meaning the class members will not be required to take any action to receive their portion of the funds, and each class member will receive a *pro rata* gross amount of the settlement fund totaling approximately $118.00, and a net payment of approximately $68.67 (after payment of attorneys' fees and costs (if the full amount requested is awarded by the Court), and fees of the settlement administrator).   (*Id.* at 1-2, 7).   In addition, the

parties agree that Plaintiffs' class counsel will file a motion requesting attorneys' fees in the maximum amount of 33.33% of the total fund and $702.60 in costs (to be paid from the common fund), but represent that the amount of fees and costs was negotiated separately from the settlement of all claims, and the settlement is not contingent on any precise award of fees.  (*Id.* at 5, 7, 10). In addition, the parties agree that the settlement administrator will receive $17,755.00, also to be paid from the common fund.  (*Id.*, at 7, n.3 & at 10).   The parties also request that Plaintiff Ulysses Holmes be designated as settlement class representative, Plaintiffs' attorneys be designated as class counsel, approval of the proposed form and manner of class notice, an order authorizing dissemination of a notice of settlement to the proposed settlement class, and an order establishing a deadline for class members to opt-out or object, and scheduling a final approval hearing.  (*Id.*, 1-2).

The Joint Motion has been referred to the undersigned for the issuance of a report and recommendation.   Upon consideration, I will respectfully recommend that the Joint Motion be granted.

## II.     Class Certification

### A.     *Legal Standards*

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'"  *Parker v. Universal Pictures*, No. 6:16-cv-1193-Orl-41DCI, 2019 WL 1521708, at *3 (M.D. Fla. Feb. 28, 2019) (quoting *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015)).  "Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met."  *Diakos*, 137 F. Supp. 3d at 1306 (citation omitted).

Although not explicitly stated in Rule 23, the Eleventh Circuit requires a party seeking to certify a class action, including via an uncontested motion, to demonstrate that the class representative has standing to sue and the proposed class is adequately defined and clearly ascertainable. *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim"); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("[A] plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable." (citation omitted)).   In addition, the moving party must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003).

After meeting these requirements, two more must be satisfied.   First, the moving party must show that the questions of law or fact common to the class members predominate over any questions affecting individual members.   Fed. R. Civ. P. 23(b)(3).   Second, the moving party must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   *Id.*   Courts have broad discretion in determining whether to certify a class and may do so only after conducting a "rigorous analysis" to ensure that the moving party has satisfied all applicable requirements of Rule 23.   *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Sers., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010).

B.       *Standing*

A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).   To establish standing, a plaintiff must show that she:   "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).   Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (internal quotation marks and citation omitted).   Therefore, the Court must determine that at least one named class representative has Article III standing to raise each class claim or subclaim. *Prado–Steiman*, 221 F.3d at 1279.

The Joint Motion identifies Plaintiff Ulysses Holmes as the suggested class representative. (Doc. 47, at 1, 19-20).   The Complaint alleges that Mr. Holmes worked for WCA for approximately one year, was terminated from employment in March 2019 (not for cause), and his termination constituted a "qualifying event" such that he was entitled to COBRA notices and continuing health coverage benefits.   (Doc. 18 ¶¶ 27-29).   The Complaint further alleges that the COBRA notice WCA mailed to Mr. Holmes violated several of COBRA's notice regulations.   (*Id.* ¶¶ 31-46). Based on the deficiencies in WCA's COBRA notice, Mr. Holmes became confused, did not elect COBRA continuing coverage, and suffered informational and tangible economic injuries.   (*Id.* ¶¶ 23-26).   These allegations are sufficient to establish that Mr. Holmes suffered an injury in fact, that a causal connection exists between the injury in fact and WCA's conduct, and that it is likely that a favorable decision would redress the injury (via statutory damages available under 29 U.S.C. § 1132(c)(1)).   Additionally, and as discussed in more detail below, there is no dispute that Mr.

Holmes possesses the same interest and suffered the same injury as the putative class.   I therefore find that the standing requirement is satisfied.[1]

C.      *Ascertainability*

A class must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).   This requires a plaintiff to show that the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).[2]   The identification of "class members is administratively feasible when it is a manageable process that does not require much, if any, individual inquiry." *Id.* (internal quotations omitted).

The settlement class is defined as:

> All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by, or on behalf of Defendant, from April 1, 2016 to November 18, 2020, or the date of receipt by the subject participants and beneficiaries, whichever is later, and who did not elect continuation of coverage.

(Doc. 47-1 ¶ 12).

I find that the definition of the class contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the class.   In addition, the parties received class data criteria from HealthEquity, Inc., the entity who provided the COBRA notice at issue to the putative class members.   According to that data, the total class size of potential members is

---

[1] While not dispositive, I note that the Settlement Agreement contains a provision whereby the parties agree that for settlement purposes only, Mr. Holmes has Article III standing.   (Doc. 47-1 ¶ 82).

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are cited as persuasive authority. *See Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

approximately 1,771.  (*Id.* ¶ 31).  The ascertainability and clearly defined requirements are satisfied.

      D.     *Rule 23(a) Requirements*

          1.     *Numerosity*

The first requirement the parties must satisfy under Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  According to the Joint Motion, approximately 1,771 class members nationwide have been identified through the discovery process.  (Doc. 47, at 3-4, 6; *see also* Doc. 47-2 ¶¶ 17-19).  This satisfies the numerosity requirement.  *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (finding that the district court did not abuse its discretion in finding that numerosity requirement was met where thirty-one individual class members from wide geographical area were identified).

          2.     *Commonality*

The second requirement the parties must satisfy under Rule 23(a) is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality "does not require that all the questions of law and fact raised by the dispute be common," or that the common questions of law or fact "predominate" over individual issues.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).  Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)).  The claims must depend upon a common contention, "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  And "even a single common question will do."  *Id.* at 359 (internal alterations omitted).

The parties identify three common questions in their Joint Motion:   (1) whether the content of the COBRA notice was proper; (2) whether each member of the putative class received, or should have received, the purported inadequate COBRA notice, and (3) whether, and to what extent, statutory penalties are appropriate.   (Doc. 47, at 17).   I agree that the resolution of these questions is central to the claim of each class member and therefore the commonality requirement has been satisfied.

### 3.   Typicality

The third prong of Rule 23(a) requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3). This prerequisite focuses on determining whether there is a sufficient nexus between the class representative's claims and those of the class at large.   *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).   Specifically, the "class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)."   *Id.*   This does not mean that the class representative's claims and those of the class must be identical. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).   Rather, once the class representative demonstrates that he was affected by the same unlawful conduct that affected the rest of the class, factual variations among the individual claims generally will not defeat typicality.   *Id.*   There is a sufficient nexus if the class representatives' claims and the potential class members' claims arise from the same event, pattern, or practice and are based on the same theories. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

Mr. Holmes' claims are typical of the claims of each putative class member.   Specifically, Mr. Holmes alleged that he was an employee of WCA, that he qualified for continuing health coverage, that WCA mailed (or caused to be mailed) to Mr. Holmes a legally deficient COBRA

notice, and that Mr. Holmes suffered injuries due to the deficient notice.   (Doc. 18 ¶¶ 22-35).   With respect to the proposed class, Mr. Holmes alleged that the COBRA notice WCA sent to him "[was] a form notice that was uniformly provided to all Class members.   As such, the COBRA notice that Mr. Holmes received was typical of the COBRA notices that other Class Members received, and suffered from the same deficiencies."   (*Id.* ¶ 50).   These allegations are sufficient to establish that Mr. Holmes suffered from the same unlawful conduct as the proposed members of the class he seeks to represent, and the law at issue – violations of COBRA regulations – is also the same for Mr. Holmes and all proposed class members.   Therefore, I find that the typicality requirement is satisfied.   *Cf. Junior v. Infinity Is. Co.*, No. 6:18-cv-1598-Orl-78EJK, 2020 WL 8254235, at *4 (M.D. Fla. June 5, 2020) (finding typicality satisfied where it was alleged that "Plaintiff and every Class member were insured under form Policies containing materially identical language.").

### 4.   Adequacy of Representation

The fourth and final requirement that must be satisfied under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   This involves two inquiries:   first, whether there are substantial conflicts of interest between the representatives and the potential class members, and second, whether the representatives will adequately prosecute the class action.   *Busby*, 513 F.3d at 1323.   A fundamental conflict going to the specific issues in controversy warrants denying class certification. *Valley Drug Pharm.*, 350 F.3d at 1189.   "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class."   *Id.*

Regarding the adequacy of representation, Rule 23(g)(1)(A) states that the Court must consider the following in determining the appointment of class counsel:   (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.   The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ."   Fed. R. Civ. P. 23(g)(1)(B).

With respect to Mr. Holmes, the parties have provided evidence in the form of declarations from his attorneys stating that he has actively participated in the case and will be loyal to the interests of the class as a whole.   (Docs. 47-2; 47-3).   Specifically, Mr. Holmes has "provided input and both reviewed and approved the Complaint," "participated in written discovery by responding to Defendant's interrogatories and requests for production, and also took time off from work to be deposed.   He also participated in mediation."   (Doc. 47-2 ¶ 8; *see also id.* ¶¶ 17, 19 & Doc. 47-3 ¶ 9).   Moreover, there is no claim or evidence of any conflict of interest between Mr. Holmes and the class he seeks to represent.   Therefore, I find that Mr. Holmes will adequately represent the interests of the class.

The Joint Motion requests that Mr. Holmes' attorneys, Luis A. Cabassa and Brandon J. Hill, be appointed as class counsel. (Doc. 47, 19-20).[3]   Both Mr. Cabassa and Mr. Hill have extensive litigation experience and have been appointed as class counsel in numerous class action cases, including other COBRA class actions.   (*See* Doc. 47-2 ¶¶ 5-6; Doc. 47-3 ¶¶ 2, 4, 8).   In addition, both Mr. Cabassa and Mr. Hill have represented Mr. Holmes and the putative class since the inception of this case, have performed significant work, including class discovery, in order to ascertain the potential claims involved in this action, and both attorneys are extremely

---

[3] According to the Court's docket, Mr. Holmes is represented by one additional attorney, Amanda E. Heystek, who works at the same firm as Mr. Cabassa and Mr. Hill.   The Joint Motion does not discuss Ms. Heystek, and no evidence has been presented concerning her experience.   I therefore have interpreted the Joint Motion as only requesting Mr. Cabassa and Mr. Hill as class counsel and will not further consider Ms. Heystek.

knowledgeable about the legal issues at play.   Therefore, I find that Mr. Cabassa and Mr. Hill will adequately serve as class counsel.

### E.      The Rule 23(b)(3) Requirements

Once the prerequisites of Rule 23(a) are satisfied, the Court turns to the relevant Rule 23(b) requirements.   *Vega*, 564 F.3d at 1265.   Here, the Joint Motion relies on Rule 23(b)(3).   (Doc. 47, at 21).   Pursuant to that Rule, the Court must determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and [whether] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).

### 1.      Predominance

Rule 23(b)(3)'s "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   "Common issues can predominate *only* if they have a direct impact on every class member's efforts to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."   *Carriuolo,* 823 F.3d at 985.   Where a plaintiff "must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims," the predominance factor is not satisfied.   *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated in part on other grounds as recognized in Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).   When making a predominance inquiry, the Court "must take into account the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant."   *Id.* at 1254 (internal quotation marks and citation omitted).

As previously mentioned, there are a number of common issues of law and fact present in this case. As stated in the Joint Motion "[t]he central common issues in this case concern a standardized COBRA notice that was common to all Settlement Class members [who] are believed to have received the same COBRA Notice as to the content that Plaintiff claims were not legally compliant. Moreover, common questions of law and fact pertain to whether WCA should be required to pay statutory penalties for utilizing that particular notice." (Doc. 47, at 21-22). In addition, "the Settlement Class members all are alleged to have received the same COBRA notice that was allegedly not in compliance with applicable regulations." (*Id.* at 22). In contrast, there appears to be little, if any, individualized issues involved in the class, and there is no concern over individualized damages, as each class member would receive an identical pro rata share from the common fund, and Mr. Holmes is not seeking an incentive award. Therefore, I find that issues common to the class predominate over individualized issues, and the predominance factor is satisfied.

### 2.   *Superiority*

The last requirement for class certification under Rule 23(b)(3) is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. The Court looks at several factors, including: (1) the class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by other members of the class; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P.

23(b)(3).   Further, if a court "determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions."   *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009).

I have previously determined that common issues predominate in the proposed class.   This weighs strongly in favor of finding that a class action would be superior to individual class claims. *See id.*   In addition, there is no evidence that anyone has brought an individual case involving the same set of facts and legal issues, nor is there any evidence that the class members would have a strong interest in controlling the prosecution of their individual claims.   The low dollar amount proposed to be awarded also militates against individual claims.   Further, concentrating litigation and settlement in this forum is in the interest of judicial economy, as "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."   *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).   It is undisputed that Mr. Holmes is ably prosecuting this action, and it would result in judicial inefficiency for 1,771 of the same claims against WCA to be prosecuted separately.   And finally, there do not appear to be any difficulties in managing this case as a class action.   Therefore, the proposed class meets the superiority requirement under Rule 23(b)(3).

F.      Conclusion

Having found that Article III standing exists, and that all of the requirements of Rule 23(a) and 23(b)(3) have been met, I will respectfully recommend that the Settlement Class, as defined in the Joint Motion and in this Report, be conditionally certified for settlement purposes.   I will further recommend that Plaintiff Ulysses Holmes be appointed as class representative, and that attorneys Luis A. Cabassa and Brandon J. Hill of the law firm Wenzel Fenton Cabassa, P.A., be appointed as class counsel.

### III.   Preliminary Settlement Approval

The next step is to assess whether the proposed settlement is fair and reasonable.   *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a . . . class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").   First, the Court will determine whether the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."   *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).   *See also Nolan v. Integrated Real Estate Processing*, No. 3:08-cv-642-J-34HTS, 2009 WL 10670779, at *6 (M.D. Fla. Sept. 9, 2009) ("[T]he Court must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members.").   In reaching this determination, the Court considers the following factors:   "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."   *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011) (citations omitted).   These factors are not exhaustive, however, and the Court may also consider other factors such as the burdensomeness of the claims procedure, the treatment of the class representative, the terms of settlement in similar cases, the attorney fees award, and the scope of the release.   *Palmer v. Dynamic Recovery Sol., LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *2 (M.D. Fla. May 4, 2016).   "Although class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms."   *Id.* at *3.   However, if the proposed settlement falls within the range of possible approval, then the settlement should be preliminarily

approved.  *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

Upon review, I find that each of these factors weighs in favor of a finding that the proposed settlement is fair, reasonable, and not the product of any collusion.   As to the likelihood of success at trial, the parties recognize in their Joint Motion that "there is a risk that Plaintiff would not prevail on his claims considering there are no decisions directly on-point addressing whether, or not, the language of the COBRA Notice at issue violated any of the applicable legal regulations."  (Doc. 47, at 14).   The parties further recognize that WCA raised numerous defenses, including a failure to mitigate damages or establish any prejudice.  (*Id.*).   In addition, if the case proceeded to trial, WCA would present evidence of its plan administrator's good faith in taking immediate corrective efforts with respect to the COBRA notices, and courts have refrained from awarding statutory penalties in the absence of a showing of bad faith or prejudice.  (*Id.*).   Thus, a successful outcome at trial is not guaranteed.

Mr. Holmes is only seeking statutory damages and injunctive and declaratory relief.   With respect to statutory damages, ERISA authorizes penalties of up to $110.00 per day for COBRA violations.   29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1; *see also Evans v. Books-A-Million*, 762 F.3d 1288, 1300 (11th Cir. 2014).   Thus, the range of possible recovery is from $0.00 to $110.00.   And here, the proposed settlement is for a gross amount of approximately $118.57 per class member, and a net amount (after payment of settlement administrator's fees and costs and assuming an award and payment of attorneys' fees in the amount of 33.33% of the common fund) of no less than $68.67 per class member.   This is well within the possible range of recovery, and is a fair and reasonable result, particularly in light of the possibility that Mr. Holmes may recover nothing.   And I note that other courts in this District have approved class settlements of COBRA

notice claims for similar, and even lower amounts.  *See, e.g.*, *Vazquez v. Marriott International, Inc.*, No. 8:17-cv-116-T-MSS-SPF (M.D. Fla. Feb. 27, 2020) (Doc. 127) (approving class settlement of COBRA notice claim totaling $250,000.00, with gross payments of $13.03 and net payments to each class member of approximately $5.00); *Hicks v. Lockheed Martin Corp.*, No. 8:19-cv-261-T-JSM-TGW (M.D. Fla. Sept. 3, 2019) (Doc. 34) (approving COBRA notice class settlement with total award of $1,250,000.00, gross payments of $23.15, and net payments of approximately $14.00 per class member); *Valdivieso v. Cushman & Wakefield Inc.*, No. 8:17-cv-118-T-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (approving COBRA notice class action settlement with total award of $390,000.00 and gross payments of $165.89 to each class member, and net payments of approximately $100.00 per class member).

The settlement took place following substantial discovery, including class discovery and third-party discovery, and settled at a mediation held two months prior to the deadline for filing motions for class certification.  (*see* Doc. 34, at 1-2; Docs. 35-37).   The parties had sufficient time to judge the strengths and weaknesses of their claims and defenses and were able to make well-informed decisions concerning settlement.   And while the parties vigorously litigated their respective positions, it is also clear that if settlement did not occur at this point in the case, the parties would be embarking on lengthy, extensive, and expensive further litigation, including class certification, additional merits discovery, summary judgment, trial, and potentially appeal, which could easily carry on for years.   Further, given the apparent absence of any binding decisional authority with respect to the precise issues in this case, and the numerous defenses WCA raised, such further litigation would undoubtedly be relatively complex.   Last, the parties have agreed to the settlement, and while it is too early to determine whether any class members will oppose, the settlement agreement provides that any class members who object may opt-out, and if more than 35

putative class members out-out, then WCA has the right to withdraw from the settlement, which would become null and void.   (Doc. 47, at 14-15).

As to the treatment of Mr. Holmes, the suggested class representative, I note that there is no request for any incentive award for Mr. Holmes, and that it is undisputed that he has been an active and engaged participant in this litigation and is loyal to the proposed class.  *Cf. Palmer*, 2016 WL 2348704, at *8-9 (denying preliminary approval of class action settlement in part due to payment of a proportionally overly excessive incentive award).   And the terms of the settlement are similar to those approved in other COBRA notice cases.  *See, e.g.*, *Vazquez*, No. 8:17-cv-116-T-MSS-SPF (Doc. 123-2); *Hicks*, No. 8:19-cv-261-T-JSM-TGW (Doc. 33-2); *Valdivieso*, No. 8:17-cv-118-T-SDM-JSS (Doc. 88-1).   Moreover, the release of claims contained in the Settlement Agreement is narrowly drawn – it is limited to a release of "any and all claims [by Plaintiff and any class members who have not opted-out of the class] arising out of or relating to the facts alleged in the Complaint. . . including but not limited to any and all claims relating to the COBRA Notice provided by or on behalf of WCA or the Released Parties. . . . ."   (Doc. 47-1 ¶ 47).[4]   The release expressly excludes any other ERISA claims for benefits that are unrelated to the COBRA Notice claim asserted in this case.   (*Id.*).   Last, I find that there is no evidence of any collusion between the parties, rather, the settlement resulted from good faith negotiations, among experienced counsel, facilitated by an experienced and non-interested third-party private mediator.

This leaves one final factor, the attorneys' fees award.   "Attorney's fees awarded from a common fund [must] be based upon a reasonable percentage of the fund established for the benefit

---

[4] "Released Parties" is defined as WCA, its third party COBRA notice providers, its third party health care provider, its outsourced third party COBRA administrator, and each of their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns.   (Doc. 47-1 ¶ 30).

of the class.   And this court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims." *Faught*, 668 F.3d at 1242 (citation omitted). However, "[w]here the requested fee exceeds 25%, the court is instructed to apply the twelve *Johnson* factors." *Id.*[5]   Here, the Settlement Agreement provides that class counsel will request and receive up to 33.33% of the gross settlement amount, plus costs.   (Doc. 47-1 ¶ 43).   This exceeds the range that is typically considered reasonable.   However, the parties recognize in the Joint Motion that class counsel will subsequently file a motion for attorneys' fees, which ostensibly will address the *Johnson* factors and any other applicable legal precedent, and this 33.33% is a ceiling on the maximum amount for which they will seek recovery.   (Doc. 47, at 10; *see also* Doc. 47-1 ¶ 43).   In other words, there is no guarantee that class counsel will receive 33.33% of the common fund, but there is a guarantee that they will not receive any more than that.   I am further persuaded by the parties' acknowledgement that the Settlement Agreement is not contingent upon an award of any precise amount of attorney's fees, (Doc. 47, at 5), therefore I do not find that the upper limit of 33.33% weighs against a finding that the proposed settlement is fair and reasonable.[6]

---

[5] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).   The *Johnson* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.   *Johnson*, 488 F.2d at 717-19.

[6] I note that in at least one case in this District, attorneys' fees were awarded to class counsel equating to one-third of the common fund gross amount.   *See, e.g.*, *Hicks*, No. 8:19-cv-261-T-JSM-TGW (Doc. 41) (awarding attorneys' fees of one-third of the common fund in class action that settled within nine (9) months of the filing of the case).

Having considered all of the relevant factors, as well as the strong judicial policy favoring settlement, I find that the proposed settlement is fair, adequate, and reasonable, and is not the product of collusion.   I will therefore recommend that preliminary approval of the settlement be granted.

## IV.   Class Notice

Following preliminary approval of a settlement, Rule 23 provides that the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal."   Fed. R. Civ. P. 23(e)(1)(B).   For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).   The notice must clearly and concisely include the following information in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).   Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).   Additionally, due process requires that the "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (internal quotation marks and citation omitted).

The parties have agreed to mail a short form notice to all potential class members, and to create a website and place a long form notice on the website, along with other relevant documents. (Doc. 47-1 ¶¶ 48-51; *see also id.* at 30-41).   Upon review, the proposed notices contain all of the required disclosures under Rule 23(c)(2)(B).   (Doc. 47-1, at 30-41).   Moreover, the proposed

manner of providing notice is reasonably calculated to apprise the members of the action and settlement.   WCA will send individual notices by first-class mail, there are provisions to locate class members who might have changed their addresses, a toll-free phone number for potential class members to call to obtain further information, the settlement administrator will establish a website that contains the Complaint, settlement agreement, notice, class counsel's motion for attorneys' fees, papers reflecting the costs of settlement administration, and copies of pleadings in support of approval of the settlement (such as the preliminary approval order), and the short form notice will direct potential class members to the website.   (*Id.* ¶¶ 48-51).   Because this is an opt-out class, there is no proposed claim form, and potential class members are clearly notified of the manner and time frame by which they need to provide notice of any intent to object and/or opt-out.   (*Id.* ¶¶ 52-53).   For these reasons, I therefore recommend that the Court approve the proposed notices and the manner in which notice will be served on the class members.

## V.   The Final Approval Schedule

The parties have set forth the following schedule in their Settlement Agreement:

1.   Within ten (10) business days from the date the Court grants preliminary approval of the Settlement Agreement and preliminary approval of class certification, the Settlement Administrator shall:   (1) establish the website and post the long form notice; (2) mail out the short form notice to all potential class members via First Class Mail; and (3) establish a toll-free number with an interactive voice response system that potential class members may call to obtain further information. *See* Doc. 47-1 ¶¶ 48, 50-51.

2.      Deadline for potential class members who wish to opt-out of the settlement:   60 days after the date that the short form notice is mailed.   The notice must be in writing and postmarked by this deadline.   *See* Doc. 47-1 ¶¶ 18, 52.

3.      Deadline for potential class members who wish to object to the settlement:   60 days after the date that the short form notice is mailed.    The notice of objections must be in writing and postmarked by this deadline.   *See* Doc. 47-1 ¶¶ 18, 53.

4.      Deadline for class counsel to file their motion for attorneys' fees and costs:   at least 10 days prior to the deadline for potential class members to file objections and/or opt-out.   *See* Doc. 47-1 ¶ 43.

4.      Deadline for class counsel to file their motion for final approval of settlement:   fourteen (14) days prior to the final approval hearing.   *See* Doc. 47-1 ¶ 56.

5.      Date for the final approval hearing:   at least fourteen (14) days after the filing of the motion for final approval of settlement, and not to occur until at least ninety (90) days after the Court's preliminary approval of the settlement.   *See* Doc. 47-1 ¶¶ 54, 56.

Upon review, I find the proposed schedule to be reasonable and will recommend that the Court adopt the schedule.

## VI.    Recommendation

Accordingly, I respectfully recommend that the Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 47) be **GRANTED**, and that the Court adopted the proposed preliminary approval order attached to the Joint Motion (Doc. 47-4), with two modifications.   The

proposed order states that the deadline for Plaintiff's motion for attorneys' fees is at least 14 days prior to the objection deadline for class members.   (*Id.* at 6 ¶ 15).   To comport with the Settlement Agreement, that date should be changed to "at least 10 days prior to the deadline for potential class members to file objections and/or opt-out."   *See* Doc. 47-1 ¶ 43.   In addition, the proposed order states that the deadline for the filing of the final approval motion is no later than ten (10) days prior to the date of the final approval hearing.   (Doc. 47-4, at 6 ¶ 16).   That date should be changed to "at least fourteen (14) days prior to the date of the Final Approval Hearing" in accordance with the Settlement Agreement.   *See* Doc. 47-1 ¶ 56.   I further recommend that the Court establish a date and time for the final approval hearing that the parties may include in the short and long form notices provided to potential class members.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 3, 2021.

**LESLIE R. HOFFMAN**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Presiding District Judge
Counsel of Record

- 23 -