**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO. 6:20-cv-00698-ORL-40LRH**

**ULYSSES HOLMES, individually,**

     **Plaintiff,**

**v.**

**WCA MANAGEMENT COMPANY, L.P.,**

     **Defendant.**

_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS**
**SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW**

The Class Representative, Ulysses Holmes ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1]

On June 29, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 51). That Order was entered after United States Magistrate Judge Leslie R. Hoffman issued a thorough Report and Recommendation (Doc. 48) (the "R & R") on the Parties' Joint Motion (Doc. 47) for Preliminary Approval of their Class Action Settlement.   In the R & R, Magistrate Judge Hoffman recommended the Court

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on December 18, 2020. (*See* Doc. 47-1, pp. 1-27).

certify the settlement class on preliminary basis and permit the Parties to send out notice of the settlement to class members.  Ultimately, in its June 29, 2021 Order, the Court determined that the Parties' Settlement is "fair, reasonable, and adequate." (Doc. 51, p. 3, ¶ 9).

Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all 1,720 Settlement Class Members. Attached as Exhibit B is a sworn declaration from the settlement administrator demonstrating that the response from class members as to the Parties' settlement has been overwhelmingly positive.  (Exhibit B, Declaration from Snehal Indra from American Legal Claim Services, LLC).   In fact, thus far <u>zero</u> class members have objected and <u>zero</u> have requested exclusion.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support thereof, Plaintiff states as follows:

I.      <b><u>BACKGROUND.</u></b>

**A.      <u>Nature of Plaintiff's Claim.</u>**

On or about April 2, 2020, Plaintiff filed a Class Action Complaint, which was amended on June 9, 2020 (collectively the "Complaint"), against WCA. Plaintiff asserted claims in the Complaint on behalf of himself and a putative class against WCA under the Employee Retirement Income Security Act of 1974

("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  [ECF No. 1].  Plaintiff alleged that WCA violated the COBRA notice requirements by providing him, and other class members, a deficient COBRA notice ("COBRA Notice") that failed to comply with certain requirements of the federal regulations, pursuant to 29 C.F.R. §2590.606-4(b)(4) et. seq.

Plaintiff sought statutory penalties pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1 for himself and each putative class member who was sent an allegedly defective COBRA Notice.  Plaintiff also claimed injunctive relief individually, and on behalf of the putative class, regarding the subject COBRA Notice.

**B.    WCA's Defenses.**

WCA responded to the Amended Complaint on June 15, 2020 by denying certain allegations, including that the alleged COBRA Notice did not violate any of the COBRA provisions referenced in the Complaint.   [ECF No. 19].  WCA also raised numerous affirmative defenses, including those directed at Plaintiff's class allegations – that Plaintiff is an inadequate class representative, the lack of numerosity, typicality, commonality, and that individual issues predominate over those typical of the class.  (See id).  WCA further raised defenses, including preemption of common law claims, the failure to comply with Plan documents, the failure to mitigate damages, the failure to assert a cognizable cause of action, WCA's good faith, Plaintiff's lack of injury, the

failure to satisfy jurisdictional prerequisites and exhaust administrative remedies, the COBRA Notice met the applicable legal standards, injunctive relief as inappropriate in that Plaintiff had an adequate remedy at law, Plaintiff's lack of standing and the failure to include all indispensable third parties.

The Court issued a Case Management and Scheduling Order on September 17, 2020 establishing deadlines, including the filing of the motion for class certification by December 30, 2020; discovery completion by March 26, 2021; filing dispositive motions by April 23, 2021, mediation completion by October 5, 2020 and the trial term commencing October 4, 2021. [ECF No. 17].

**C.      The Parties Engaged in Extensive Discovery Before Settling.**

Extensive discovery was conducted in this case before any settlement was reached.  The Parties initiated the discovery process by exchanging initial Rule 26 disclosures in July of 2020.  Plaintiff served class-wide written discovery on Defendant, including interrogatories, requests for production, and a notice for the deposition of Defendant's corporate representative.  Additionally, Plaintiff conducted third-party discovery, including by serving a subpoena for documents and deposition on Defendant's COBRA Administrator in mid-July, 2020.  This was done to confirm information and size related to the putative class.

Defendant, in turn, served written discovery on Holmes, including interrogatories, requests for production, and noticed him for deposition.

4

Holmes responded to Defendant's interrogatories and requests for production on August 26, 2020. Likewise, Defendant responded to Plaintiff's interrogatories and requests for production shortly thereafter. The Parties also exchanged hundreds of pages of documents. Holmes was deposed by Defendant's counsel on September 2, 2020. It was only after sufficient discovery was conducted that the Parties mediated this case, as set forth further below.

**D.      Mediation and Settlement.**

Following the conclusion of extensive discovery, the Parties and their Counsel attended mediation with highly-respected mediator, Carlos Burruezo, on October 5, 2020. [ECF No. 36]. With the assistance of Mr. Burruezo, a settlement agreement was reached at the mediation conference. After mediation, the Parties have agreed on all terms of the settlement and entered into an executed Settlement Agreement.

**E.      Benefits to the Settlement Class.**

Subject to final Court approval, a settlement account will be funded in the total gross amount of $210,000, which will be used to compensate settlement class members on a pro rata portion of the gross settlement amount. This amount includes the anticipated amount that WCA will pay if every class member participated in the settlement and received a settlement payment, class counsel's fees, litigation costs, and settlement administration expenses.

The net settlement proceeds of the total gross settlement will be distributed evenly among all settlement class members on a pro rata basis and will be made on a "claims paid" basis without the need to fill out, or submit, a claim form.  The total of all payments, whether for attorney's fees, costs, expenses, administrative expenses, and class member settlement payments, shall not exceed the gross settlement amount of $210,000.  With the Settlement Class comprised of approximately 1,720 members, each settlement class member, who does not opt-out of the settlement, will be allocated a gross settlement payment of approximately $118.57.  If the Court awards the amount sought for the Class Counsel's attorney fees and costs, and expenses of settlement administration, the net amount payable to each class member will be approximately $68.67.   Every class member will be mailed a check by the Settlement Administrator receive a without having to take any action whatsoever, as this is a "claim paid" settlement.   And potential class members who elect to opt-out of the settlement may pursue all of their claims without release.  If any settlement class member fails to tender his/her settlement payment checks within the period provided in the Settlement Agreement, any funds remaining in the settlement account (after deduction for all Court-approved deductions) will revert to Defendant with the remaining balance paid in equal distributions to WCA and Empyrean Benefit Solutions, Inc.

Importantly, the Parties did not negotiate attorneys' fees and costs or service awards until the Parties had agreed upon all material terms of the Settlement. Pursuant to the Settlement, Class Counsel is authorized to file this unopposed petition for up to one-third of the fund as attorneys' fees, plus reasonable litigation costs. Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees or being approved.

F.   **Administration of Notice.**

The Parties hired a private, third-party vendor, American Legal Claim Services, LLC, ("Settlement Administrator") to administer notice in this case. The Settlement Administrator's sworn declaration, attached as Exhibit B, details the extensive efforts the Settlement Administrator has undertaken to ensure Class Members receive the Court-approved notice. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Common Fund.

G.   **The Court's Order granting Preliminary Approval of the Settlement.**

As explained above, on June 29, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 51). That Order was entered after United States Magistrate Judge Leslie R. Hoffman issued a thorough Report and

Recommendation (Doc. 48) (the "R & R") on the Parties' Joint Motion (Doc. 47) for Preliminary Approval of their Class Action Settlement.    In the R & R, Magistrate Judge Hoffman recommended the Court certify the settlement class on preliminary basis and permit the Parties to send out notice of the settlement to class members.  Ultimately, in its June 29, 2021 Order, the Court determined that the Parties' Settlement terms are "fair, reasonable, and adequate." (Doc. 51, p. 3, ¶ 9).

Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all 1,720 Settlement Class Members. Attached as Exhibit B is a sworn declaration from the settlement administrator demonstrating that the response from class members as to the Parties' settlement has been overwhelmingly positive.

**H.**   **The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC sent the short form Class Notice approved by the Court to the Settlement Class Members on June 11, 2021, via first-class mail.  A total of 1,720 Class Notices were mailed to members of the Settlement Class.  (*See* Exhibit B, Declaration from Snehal Indra, ¶ 9) (hereinafter "Indra Dec.").

The Settlement Class Members overwhelmingly accepted the Settlement. So far none have objected to the settlement. (*See* Indra Dec., ¶¶ 9-10).  Not only that, to date none have asked to be excluded.  (*See* Indra Dec., ¶¶ 9-10).  Given these facts, the Class Members' reactions were overwhelmingly positive.

8

## II.   THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

### A.   The Class Has Already Been Certified on a Preliminary Basis.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 51). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### B.   Notice to the Class under Fed.R.Civ.P. 23(e)(1).

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by send out the Court-approved short form version of the notice to all class members via U.S. Mail. That notice included all information required by

Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information. Thus, notice was sufficient.

**C.   <u>Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2)</u>.**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter a Final Order approving the Class Action Settlement Agreement.

**1.   <u>The Class Representative and Class Counsel Have Adequately Represented the Class</u>.**

There is no question that Ulysses Holmes and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Ulysses Holmes, is adequate given that his interests are

equivalent to those of the Settlement Class.  He was actively involved in this case from its inception, including providing the original documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in settlement discussions, participating in written discovery, preparing for and attending his deposition, and also attending the Zoom mediation. Furthermore, there is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. He, along with his counsel, secured a six-figure settlement from a highly-sophisticated Defendant in favor of the class members he represents.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously-filed declarations by class counsel, *see* Docs. 47-2 (Brandon J. Hill Decl.), and 47-2 (Luis A. Cabassa Decl.), and the attached declaration.  In fact, the undersigned have extensive class action experience and have been appointed as class counsel in many, many class action cases, including the following recent COBRA class action cases: *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); *Valdivieso v. Cushman & Wakefield, Inc*., M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersigned as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc*., M.D. Fla. Case No.: 8:18-cv- 01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63); *Silberstein v. Petsmart, Inc*., Case No.: 8:19-cv-02800-SCB-AAS (M.D. Fla. Dec. 4, 2020) (Doc. 38).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

## 2. <u>The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator</u>.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. Not only that, the Parties used a highly-respected mediator in this case, Carlos J. Burruezo. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding

that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3.    <u>The Settlement Provides Adequate Relief to the Class Members</u>.

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $118.57 and a net payment of

approximately $68.67.[2]  These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.  *See e.g., Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).  As such, this recovery falls well within the range of reasonableness for settlement purposes.

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits.  Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A

---

[2] $210,000 - $70,000 in attorneys' fees (33.3% of total fund) - $702.60 in litigation costs - $17,755 in settlement administrator costs = $121,542.40 / 1,771 total class members = $68.67 net recovery per class member.  It should be noted that the net recovery will actually be higher than $68.67 because the class size was reduced from 1,771 to 1,720 once the final class list was provided.

settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."  *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency.  *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity*

*Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice).   Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant.  Plaintiff still had to establish that class certification was warranted, and further demonstrate the merits of his claim, both individually and on behalf of any class.   Each of these remaining phases of the litigation presents serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid.  *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement the Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff also supports the Settlement as do the Class Members— evidenced by the lack of objections and low exclusion rate.

**4.**   **The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, members of the class will receive a *pro rata* gross amount of the

settlement fund totaling approximately $118.57 and a net payment of approximately $68.67. These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.[3]

Moreover, this a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. There is nothing unreasonable nor unfair about funds from checks that are not cashed reverting to Defendant. *See, e.g., Atkinson v. Wal-Mart Stores, Inc.*, No. 08-cv-691-T 30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving class action settlement with full reversion).

As discussed below, Plaintiff faced significant risks with respect to liability and damages. If Plaintiff had chosen to continue to litigate his claims, a successful outcome was far from guaranteed.

First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent

---

[3] *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 member class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all.  Third, even if Plaintiff overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members.   *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely

the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

### D.   The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 47-1, the class action settlement agreement. Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

### III.   <u>CONCLUSION</u>.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion.  A proposed Order is attached as Exhibit A.

### IV.   <u>CERTIFICATE OF GOOD FAITH</u>.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does <u>not</u> oppose the relief requested herein.

DATED this 31st day of December, 2021.

Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
***Attorneys for Plaintiff and the Class***

### <u>CERTIFICATE OF SERVICE</u>

      **I HEREBY CERTIFY** that on this 31st day of December, 2021, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                          */s/Brandon J. Hill*
                                          **BRANDON J. HILL**